**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                    )
JOSEPH K. DOWLEY,                   )
                                    )
                Plaintiff,          )
                                    )
        v.                          )  Civil Action No. 05-622 (EGS)
                                    )
                                    )
DEWEY BALLANTINE, LLP, et al.,      )
                                    )
                Defendants.         )
_____)
```

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Joseph Dowley, is a former partner of defendant law firm, Dewey Ballantine, LLP ("Dewey").  He commenced this suit alleging breach of fiduciary duty, breach of contract, age discrimination and other statutory and common law claims arising out of defendants' conduct in terminating plaintiff's partnership with the firm.  Pending before the Court is defendants' Motion to Dismiss the Action and Compel Arbitration.  Defendants argue that this action should be dismissed because all of the claims contained in the plaintiff's Complaint are subject to arbitration under a valid arbitration agreement between the parties.

A motions hearing was held on March 22, 2006.  Upon careful consideration of the motion, the response and reply thereto, the oral arguments, and the entire record herein, the Court concludes that the parties entered into a valid and enforceable arbitration agreement, and that the agreement encompasses all of

plaintiff's claims asserted in his Complaint.  Accordingly, the defendant's motion is **GRANTED** and all of the plaintiff's claims are **DISMISSED with prejudice**.  Further, the parties are ordered to arbitrate all of the claims asserted in the plaintiff's Complaint.

## I.   BACKGROUND

Plaintiff Joseph Dowley became a full equity partner of Dewey in 1987. Compl. ¶ 12.  He remained a partner until October 24, 2003, when he was asked to leave the firm by the Management Committee.[1] Compl. ¶ 27.  Plaintiff was one of 15 partners whose association with Dewey was terminated at around the same time. Compl. ¶ 28.  Eleven of the 15 terminated partners were age 50 or older. Compl. ¶ 16.

When plaintiff became a member of the Dewey partnership, he signed the Dewey Ballantine Firm Agreement ("partnership agreement"). Shutran Decl. ¶ 4.  The partnership agreement, under Article IX, contains a provision for confidential arbitration, which provides in relevant part:

> Arbitration.  In the event of a controversy or claim arising
> out of this Agreement which cannot be settled by those

---

[1] The Management Committee is a small group of partners that manages the firm and determines the compensation for each partner. Comp.  ¶ 1.  The other named defendants in this suit, Morton Pierce, Sanford Morehouse, Gordon Warnke, Richard Shutran, and John Salmon are all members of Dewey, and at all relevant times, were on the Management Committee.  Compl. ¶¶ 5-9.  It was defendant Morehouse who informed the plaintiff that he was being terminated from the firm. Compl. ¶ 33.

concerned, it shall be settled by arbitration in accordance
with the rules of the American Arbitration Association and
judgment upon the award may be entered in any court having
jurisdiction provided, however, that no person shall serve
as an arbitrator hereunder who is not a member of the bar of
the State of New York.

Dewey Ballantine LLP Firm Agreement, Article IX (B).

The partnership agreement was amended and approved by all of
the partners on October 17, 2003. Compl. ¶ 26.  Seven days later,
plaintiff was asked to leave the partnership. Compl. ¶ 27.  The
amended partnership agreement made certain changes to Article IV
of the agreement, which addressed payments following retirement
from the firm.[2] Compl. ¶ 18.  The changes reduced anticipated
pension payments and other benefits. Compl. ¶¶ 1, 18.  Plaintiff
alleges that if all of the partners had been informed by the
Management Committee about the impending terminations of nearly
10% of the partners, the partners of the firm may not have voted
for the proposed modifications to the partnership agreement.
Compl. ¶¶ 65, 66.

This action was commenced by plaintiff in the Superior Court
of the District of Columbia on February 24, 2005.  However, the
case was removed by defendants to this Court on March 24, 2005.
In his Complaint, the plaintiff alleges that the defendants

---

[2] When plaintiff was terminated, he became a "retired
partner," pursuant to Article I of the partnership agreement.
Shutran Decl. ¶ 9.  A retired partner, as defined by the
partnership agreement, are those who are terminated from firm
membership in any manner, including voluntary or involuntary
termination. *Id.*

breached their legal, contractual and/or fiduciary duties to plaintiff by withholding and concealing the imminent termination of nearly 10% of the partners, and the financial analysis done in anticipation of those departures, including their overall impact on departure payments and retirement obligations. Compl. ¶ 66. Specifically, plaintiff alleges breach of fiduciary duty, fraud/overreaching, breach of contract, accounting (pattern of self-dealing), breach of covenant of good faith and fair dealing, interference with prospective economic advantage, age discrimination under the D.C. Human Rights Act[3], D.C. Code § 2-1401.01 *et seq.*, and violation of ERISA.  Defendants have moved the Court for an Order, pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3,4, to dismiss this action and to compel plaintiff to arbitrate his claims.

## II.  DISCUSSION

### A.   Standard of Review

The Court will not grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355

---

[3] During the motions hearing, the defendants' counsel referred to the plaintiff's age discrimination suit as a claim arising under the Age Discrimination in Employment Act ("ADEA"), however, plaintiff has only claimed age discrimination under the D.C. Human Rights Act. *See* Tr. 3/22/06 42:1, 44:17; Compl. ¶¶ 94-101.

U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *See Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276.

**B.    The Federal Arbitration Act**

The Court is guided by the following, well-settled principles of arbitration. One, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 648 (1986). Two, the question of whether a claim is arbitrable is an issue for judicial determination. *Id.* at 649. In other words, a court is not to rule on the merits of the underlying claims, rather it must only determine whether the parties have agreed to submit a particular grievance to arbitration. *Id.* Three, there is a strong federal policy in favor of arbitration and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). "Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the

particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Tech.,* 475 U.S. at 650.  However, this Circuit has cautioned that, although courts are to be mindful of the federal policy in favor of arbitration, "it is [the court's] task nonetheless to determine what appears to be most consistent with the intent of the parties." *Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.,* 580 F.2d 746, 760-61 (D.C. Cir. 1988). Four, the Supreme Court has held that the FAA applies to all contracts involving interstate commerce, including employment contracts. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995).

Determining whether the parties have agreed to arbitrate the disputes in question proceeds along a two-part inquiry.  First, the Court must decide whether a valid agreement to arbitrate exists between the parties. *Nelson v. Insignia/Esg, Inc*. 215 F. Supp. 2d 143, 150 (D.D.C. 2002). Second, it must decide whether the specific disputes fall within the scope of the agreement to arbitrate. *Id.*  "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *H.S. Gregory v. Electro-Mechanical Corp.,* 83 F.3d 382, 383 (11th Cir. 1996). *See also Genesco Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d

840, 846 (2d Cir. 1987) ("[i]f the allegations underlying the claims 'touch matters' covered by the sales agreement, then those claims must be arbitrated, whatever the legal labels attached to them.").

When engaging in this two-part inquiry, federal courts have "[a]pplied ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Therefore, "[u]nder the District of Columbia law, the party asserting the existence of a contract to submit disputes to arbitration has the burden of proving its existence." *Bailey v. Federal Nat. Morg. Ass'n.*, 209 F.3d 740, 746 (D.C. Cir. 2000).  On the other hand, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson,* 215 F. Supp. 2d at 149.  In this case, the defendants have the burden of proving that the parties entered into a valid arbitration agreement.  If the defendants are successful, the plaintiff must then prove that the agreement does not encompass his claims, otherwise, he will be compelled to arbitrate.

Finally, arbitrability of each disputed claim is to be determined separately, even if "the result would be the possible inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).  Therefore, there may be situations where it is possible

to have some claims arbitrated while others proceed in court. *Id*.

## C.    The Parties Entered into a Valid and Enforceable Arbitration Agreement

The parties agree that a valid arbitration agreement exists.[4]  However, plaintiff contends that the arbitration agreement is not enforceable against some of his claims for the agreement has failed to meet certain procedural safeguards. Specifically, he argues that the arbitration agreement: does not provide for a neutral forum or an unbiased arbitrator for it requires the arbitration to be in New York and the arbitrator to be a member of the New York bar[5]; does not guaranty plaintiff with the taking of any depositions; does not require a written award; does not provide for all types of relief that would be available in court; and requires plaintiff to pay unreasonable

---

[4] Plaintiff acknowledges the existence and the binding effect of the partnership agreement.  He states in his complaint that "[t]he Partnership Agreement is a written, express contract, binding on all defendants in this action."  Compl. ¶ 78. Plaintiff also states in his Opposition to Motion to Compel Arbitration that half of his claims are within the scope of the arbitration agreement at issue in this case. *See* Pl.'s Opp. at 1. Further, plaintiff's counsel stated at the motions hearing what claims fall under the arbitration agreement and what claims do not. *See* Transcript of Motions Hearing, March 22, 2006 ("Tr. 3/22/06") at 27:24-28:7.  In sum, plaintiff has recognized the existence of a valid arbitration provision in the partnership agreement.

[5] Dewey Ballantine is organized as a limited liability partnership under the laws of the State of New York. Shutran Dec. ¶ 2.  It maintains law offices in the District of Columbia and is licensed to conduct business in the District of Columbia. Comp. ¶ 4.

costs and arbitrator's fees and expenses.

Arbitration agreements are not *per se* enforceable. *See Cole v. Burns Internat'l Sec. Serv.*, 105 F.3d 1465, 1484 (D.C. Cir. 1997) (holding that the proposition that an arbitration agreement is enforceable no matter what rights it waives or what burdens it imposes is contrary to Supreme Court precedent). In *Cole*, the Court applied the factors addressed by the Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), to determine whether an arbitration procedure effectively vindicates a plaintiff's federal statutory claims and rights. 105 F.3d at 1484. The factors discussed by the Court are whether an arbitration agreement (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Id.* The application of *Cole* is limited to federal statutory claims and does not extend to common law claims.[6] *See*

---

[6] Defendants also argue that *Cole* does not apply to D.C. statutory claims either. Therefore, the only claim for which *Cole* factors are applicable is the violation of the ERISA claim. For this proposition, defendants cite to *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 156-57 (D.D.C. 2002). The Court in *Nelson* held that when *Cole* is read in conjunction with *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000), *Brown v. Wheat First Sec., Inc.*, 257 F.3d 821 (D.C. Cir. 2001), and *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702 (D.C. Cir. 2001), *Cole* does not

*Brown v. Wheat First Sec., Inc.*, 257 F.3d 821, 825 (D.C. Cir. 2001) ("our opinion in *Cole* is limited at vital points to statutory rights").

The arbitration agreement in question states that the arbitration will be in accordance with the rules of the American Arbitration Association ("AAA").  *See* Dewey Ballantine LLP Firm Agreement, Article IX (B).  Depending on the type of claims to be arbitrated, there are different sets of AAA rules to guide the arbitration.  The Court will examine plaintiff's arguments using *National Rules for the Resolution of Employment Disputes*, American Arbitration Association (effective November 1, 2002) ("AAA Rules").[7]  The provisions of the AAA Rules relevant to the Court's analysis are as follows:

---

apply to District of Columbia statutory claims, just as *Cole* is not applicable to common law claims.  At this time, this Court need not decide whether the *Cole* factors are applicable to plaintiff's D.C. statutory claim or not, for the Court has herein concluded that the arbitration agreement, as applied to the ERISA claim, is enforceable, having found no procedural or substantive infirmities.

[7] Plaintiff asserts, in its opposition, that if he is compelled to arbitrate, Dewey has steadfastly maintained that commercial litigation rules would apply. Pl.'s Opp. at 9. As a result, plaintiff has based his procedural inadequacies arguments on the commercial litigation rules.  However, plaintiff believes that AAA employment rules would be more appropriate in this instance.  Dewey, in its reply, has referred to both AAA commercial and employment arbitration rules, and has stated that both of these two rules provide sufficient procedural protections.  Defs.' Reply at 3.  Therefore, since Dewey has conceded that AAA employment rules are as equally applicable as the commercial litigation rules to this case, the Court will use the AAA employment rules.

<u>Rule 7</u>: The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

<u>Rule 9</u>: The parties may designate the location of the arbitration by mutual agreement. In the absence of such agreement before the appointment of the arbitrator, any party may request a specific hearing location by notifying the AAA in writing and simultaneously mailing a copy of the request to the other party(s).  If the AAA receives no objection within ten (10) days of the date of the request, the hearing shall be held at the requested location.  If a timely objection is filed with the AAA, the AAA shall have the power to determine the location and its decision shall be final and binding. After the appointment of the arbitrator, the arbitrator shall resolve all disputes regarding the location of the hearing.

<u>Rule 11(a)(I)</u>: Arbitrators serving under these rules shall have no personal or financial interest in the results of the proceedings in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias.

<u>Rule 11(b)</u>: Prior to accepting appointment, the prospective arbitrator shall disclose all information that might be relevant to the standards of neutrality set forth in this Section, including but not limited to service as a neutral in any past or pending case involving any of the parties and/or their representatives or that may prevent a prompt hearing.

<u>Rule 11(c)(ii)</u>: Any party may challenge the qualifications of an arbitrator by communicating its objections to the AAA in writing.  Upon receipt of the objection, the AAA either shall replace the arbitrator or communicate the objection to the other parties.  If any party believes that the objection does not merit disqualification of the arbitrator, the party shall so communicate to the AAA and to the other parties within (10) days of the receipt of the objection from the AAA.  Upon objection of a party to the service of an arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.

Rule 34(c): The award shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise. It shall be executed in the manner required by law.

Rule 34(d): The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided Section 38, 39, and 40 in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA.

The Court will address each of the plaintiff's arguments in turn.  First, Rule 9 of the AAA Rules states that if there is a disagreement amongst the parties as to the appropriate location of the arbitration, the parties can express their preferences and objections in writing, and upon consideration of those submissions, the AAA will determine the location.  If an arbitrator has been appointed, the arbitrator will resolve the dispute regarding the location of the hearing.  The arbitration agreement in question does not specify a particular location for the arbitration hearing, and the procedures set in place by Rule 9 for determining the location adequately provides the plaintiff with  opportunities to voice his preferences and objections.

Whereas the arbitration agreement does not specify the location, it does specify that the arbitrator be a member of the New York bar.  Clearly, there are many members of the New York bar residing and practicing outside of that state, thus, the fact that the arbitrator must be a member of the New York bar does not

restrict the location of the hearing to the State of New York. Further, just because Dewey is a "well-known New York law firm"[8] does not necessarily mean that the New York bar member requirement for an arbitrator will unduly bias the proceedings toward the defendant.  Rules 11(a)(ii), (b) and (c)(ii) provide that the prospective arbitrator must not have any interest or relation in the proceedings, must disclose all information that might be relevant to the standards of neutrality as set forth in the rules, and the parties can challenge to disqualify a potential arbitrator.  In sum, the New York bar member requirement for the arbitrator does not have the effect of inviting bias or skewing the process in favor of the defendants to the detriment of the plaintiff.

Second, AAA Rule 7 states that "the arbitrator shall have the authority to order such discovery, by way of deposition, document production or otherwise."  The Court certainly appreciates that depositions are an important discovery tool in a discrimination case.  Under Rule 7, plaintiff will be afforded more than minimal discovery.  In fact, he will be afforded as much or as little discovery as deemed appropriate by the neutral arbitrator who is directed to conduct "a full and fair exploration of the issues in dispute."  AAA Rule 7.

Third, under Rule 34(c) of the AAA Rules, written awards

---

[8] *See* Pl.'s Opp. at 7.

providing reasons for the award are required unless parties agree otherwise.  Rule 34(c) protects plaintiff's substantive and statutory rights for he can seek review of the arbitrator's findings and awards and ensure that the arbitrator did not make a decision in manifest disregard of the law.  Fourth, although the arbitration agreement in question is silent on the scope of relief available, Rule 34(d) of the AAA Rules states that "the arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." AAA Rule 34(d).  In sum, if the plaintiff prevails at arbitration, he has at his disposal any remedy and relief available in a court of law.  Clearly, plaintiff's rights are sufficiently protected.

Finally, plaintiff argues that the $8,000 filing fee for his protective notice of arbitration, plus yet to be determined administrative fees and costs and the arbitrator's compensation for his services, amount to an excessive and burdensome cost on the plaintiff, as compared to the $150.00 charge for filing a civil action in this Court.  Dewey has not made any offers to absorb any of the costs of arbitration.

In *Green Tree Fin. Corp., v. Randolph*, 531 U.S. 79, 91-92 (2000), the Supreme Court held that an arbitration agreement's silence with respect to the costs of arbitration does not render

that agreement unenforceable on the theory that it fails to affirmatively protect a party from potentially steep arbitration costs.  The Supreme Court further held that the party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs, thus, the party seeking arbitration must come forward with contrary evidence. *Green Tree*, 531 U.S. at 522.  Following *Green Tree*, this Circuit held that assessment of some of the arbitral forum fees against an employee does not render an arbitration award unenforceable. *LaPrade v. Kidder, Peabody Co., Inc.*, 246 F.3d 702, 707 (D.C. Cir. 2001).  This is so because a party "could be required to assume reasonable costs of filing fees and other administrative expenses arising from arbitration of statutory claims because parties appearing in federal court may likewise be required to pay such costs." *Id.* at 707 (quoting *Cole*, 105 F.3d at 1484). *See also Bradford v. Rockwell Semi-Conductor Sys., Inc.,* 238 F.3d. 549, 556 (4th Cir. 2001) (holding that the appropriate inquiry for determining whether the arbitral forum is an adequate and accessible substitute to litigation is a case-by-case analysis that "focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the

15

bringing of claims"); *Nelson*, 215 F. Supp. at 153 (noting that following *Green Tree*, the vast majority of the Circuits employ a case-by-case analysis and they focus on the record to determine whether the costs could foreclose a litigant from pursuing arbitration).

As the party asserting that the arbitration agreement is unenforceable, the plaintiff bears the burden of showing the likelihood of incurring burdensome expenses that would prohibit him from vindicating his statutory claims in an arbitral forum. *Green Tree*, 531 U.S. at 92.  This the plaintiff has failed to do. He has not adequately shown that the costs are prohibitive, or that the large arbitration costs would preclude him from effectively vindicating his statutory rights in the arbitral forum. *Id*. at 91.  The only known cost at this juncture is $8,000.  The Court recognizes that the $150.00 court filing fee pales in comparison to the initial cost for arbitration. However, the Court also recognizes that plaintiff was a partner at a well-known international law firm for 17 years, and defendants have asserted that plaintiff has earned hundreds of thousands of dollars per year as a partner at Dewey. *See* Defs.' Reply at 3 n.2.  In short, the Court is not persuaded that plaintiff has adequately carried his burden of demonstrating that the costs are so prohibitive that they effectively preclude him from vindicating his rights in the arbitral forum.  Accordingly,

the Court finds that the arbitration agreement in question does not run afoul of the *Cole* factors.  The arbitration agreement is enforceable and does sufficiently protect plaintiff's substantive and procedural rights.

### D.   The Agreement to Arbitrate Encompasses the Claims in the Complaint

Having concluded that a valid, enforceable arbitration agreement exists, the Court must next examine the scope of the arbitration agreement and determine whether the agreement covers all of plaintiff's claims.

Plaintiff argues that the arbitration agreement in question is a narrow agreement, meaning it only applies to a limited class of disputes "arising out of the agreement" such as contract disputes.  Defendants assert that several of plaintiffs claims - breach of contract, fraud/overreaching and accounting - are either based squarely on the terms of, or require interpretation of the agreement itself, and thus, are plainly within the scope of the agreement.  With regard to plaintiff's remaining claims - breach of fiduciary duty, violation of the covenant of good faith and fair dealing, age discrimination, interference with prospective economic advantage, and ERISA - they all arise out of Dewey's right to request plaintiff to withdraw from the partnership, and thus, also are within the scope of the arbitration agreement.

17

Courts have distinguished a "narrow" arbitration clause that "covers only specified types of disputes" from a "broad" arbitration clause that provides generally that disputes "arising under" or "concerning" the contract are covered. *Nat'l R.R. Passenger Corp.*, 850 F. 2d at 760.  The Supreme Court has indicated that when an arbitration agreement contains the dual phrases "arising out of or relating to," it is proper to interpret the agreement broadly to cover matters that touch upon the contract to be arbitrable. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624, n.13 (1985).  *See also Prima Paint Corp. v. Flood & Conklin Mgf. Co.*, 388 U.S. 395, 406 (1967)(noting that the words "arising out of or relating to" is "easily broad enough to encompass" the claims therein asserted).

The courts disagree as to whether using the phrase "arising out of" or "arising under" without the phrase "relating to" still constitute a broad arbitration provision.  The Ninth Circuit has held that the omission of the phrase "relating to" is significant. *Tracer Research Corp. v. Nat'l Envtl. Serv. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994). "[A]n arbitration clause that covers  disputes 'arising under' [or 'arising out of'] an agreement, but omit[s] references to claims 'relating to' an agreement cover[s] only those disputes relating to the interpretation and performance of the contract itself." *Id*.  The

18

Fifth Circuit agrees with the Ninth Circuit in that it distinguishes "narrow arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061,1067 (5th Cir. 1998).

Other Circuits, specifically, the Eleventh and the Seventh, plus a district court in Minnesota, have rejected the approach taken by the Ninth and the Fifth Circuits by holding that the terms "arising out of," "arising under," and "arising hereunder," are sufficiently broad so as to encompass all claims that are germane to the subject matter of the contract. *See Gregory*, 83 F.3d at 385-86 (holding that claims of fraud, fraudulent inducement, deceit, misrepresentation, conversion, breach of good faith and fair dealing, and outrage were covered by an arbitration agreement applicable to any dispute which may arise hereunder); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Internat'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (holding that "arising out of" reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se.  Further, adding "relating to" to "arising out of" does not substantially broaden the scope of an arbitration clause); *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp. 2d 986, 996 (D. Minn. 1999)

(holding that an interpretation of "arising under," or "arising out of," should be as broad as that applied to "arising out of or relating to" for the omission of "relating to" creates an ambiguity as to the scope of the arbitrability which must be resolved, absent some other showing, in favor of arbitration). The Eleventh[9], the Seventh and the district court in Minnesota have based their rationale on the Supreme Court's instruction that "any doubt concerning the scope of arbitrable issues should be resolved in favor or arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.[10]

---

[9] In *H.S. Gregory,* the Eleventh Circuit also relied on the Supreme Court case *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974). 83 F.3d at 385.  In *Scherk,* the scope of the arbitration clause was not an issue raised by the parties, however, the Eleventh Circuit found the language and reasoning of the Supreme Court instructive.  *Scherk* involved a clause requiring arbitration of "any controversy or claim . . . aris[ing] out of this agreement or the breach thereof." *Scherk*, 417 U.S. at 508. The plaintiff in *Scherk* raised a fraudulent misrepresentation claim against the defendant relating to trademarks, and the Supreme Court held that arbitration was required because the claim "arose out" of the contract. *Id*.  Although the Supreme Court did not identify or label the arbitration clause as a broad provision, the Eleventh Circuit extrapolated as much in view of the fact that fraudulent misrepresentation was covered by the arbitration clause in *Scherk*.

[10] It should be noted here the unique position of the Second Circuit.  The Second Circuit in *In re Kinoshita*, 287 F.2d 951 (2d Cir. 1961) dealt with this specific arbitration clause, "if any dispute or difference should arise under this agreement," and held that that clause was not sufficiently broad to encompass a claim of fraudulent inducement.  The same Second Circuit, in *S.A. Mineracao da Trindade-Samitri* v. *Utah Internat'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984), "decline[d] to overrule *In re Kinoshita*, despite its inconsistency with federal policy favoring arbitration . . . because [the Court] was concerned that

Here, the arbitration agreement requires that "a controversy
or claim *arising out of* this Agreement . . . shall be settled by
arbitration." Dewey Ballantine LLP Firm Agreement, Article IX (B)
(emphasis added).  Although the arbitration clause does not
contain the words "relating to," the phrase "arising out of"
should be interpreted broadly to cover all of the disputed claims
in this case.  Bearing in mind the Supreme Court's instruction
that "any doubt concerning the scope of arbitrable issues should
be resolved in favor of arbitration," the omission of the words
"relating to" is not fatal to the broad scope of the arbitration
agreement in question.  Further, the omission does not constitute
"positive assurance that the arbitration clause is not
susceptible of an interpretation that covers the asserted
dispute." *AT&T Technologies,* 475 U.S. at 648.  In short, in view
of a national policy favoring arbitration, *see Buckeye Check
Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1207 (2006), unless
the language excluding certain disputes from arbitration is clear
and unambiguous, arbitration should be ordered.  Therefore, any

---

contracting parties may have (in theory at least) relied on that
case in their formulation of an arbitration provision."  However,
the Court did confine *Kinoshita* to its precise facts, and held
that if the parties relied on *Kinoshita* to formulate a narrow
arbitration clause, the parties must adopt the exact language of
the arbitration provision in *Kinoshita. Id*.  Ultimately, the
Second Circuit  determined that *Kinoshita* was inapplicable  to
*S.A. Mineracao da Trindade-Samitri*, and found that the
arbitration clause, "any question or dispute arising or occurring
under," is to be construed as broadly as possible.  *Id*. at 194.

dispute between plaintiff and Dewey that is in any way connected with the partnership agreement, and "arises out of" their agreement is subject to arbitration.

Additionally, although this Circuit has yet to interpret the scope of an arbitration clause with the language "arising out of," it did hold that the phrase "arising under" is to be interpreted broadly. *Nat'l R.R. Passenger Corp.*, 850 F. 2d at 760.  This Court finds that the language "arising under" is more restrictive then "arising out of," for "arising under" may denote disputes limited to the interpretation and performance of the contract itself.  However, "arising out of" reaches all disputes having their origin in the contract, whether or not they implicate interpretation or performance of the contract per se.  Therefore, if "arising under" constitutes a broad arbitration clause, "arising out of" constitutes even a broader arbitration clause that covers all claims that are germane to the subject matter of the contract.  Plaintiff's breach of contract, fraud/overreaching, and accounting claims are based squarely on the terms of the partnership agreement itself, so, they arise under the partnership agreement and are arbitrable.  Plaintiff's breach of fiduciary duty, violation of the covenant of good faith and fair dealing, interference with economic advantage, age

discrimination under the D.C. Human Rights Act, and ERISA[11]
claims all arise out of Dewey's request of plaintiff to withdraw
from the partnership and, thus, are arbitrable. In sum, because
all of the plaintiff's claims "touch" matters covered by the
partnership agreement, they are arbitrable. *See Pennzoil*, 139 F.
3d 1061, 1068 (quoting *Mitsubishi*, 473 U.S. at 625 n. 14).

## III. FRAUD

Finally, plaintiff argues that because there was fraud in
the inducement of the arbitration clause, the arbitration
agreement is invalid.  Defendant contends that because the
plaintiff has failed to demonstrate any evidence of fraud in
connection with the arbitration clause, plaintiff's argument must
fail.

In *Prima Paint Corp.*, the Supreme Court held that a claim of
fraud in the inducement of the contract, as opposed to the

---

[11] At the motions hearing, plaintiff argued that the ERISA
claim  is not arbitrable for "the ERISA plan is a freestanding
document. It's a freestanding plan.  It has non-partners in it.
Nothing in that plan is governed by the partnership agreement."
Tr. 3/22/06, 32:9-12.  The Court is not persuaded by the
plaintiff's argument.  Both partners and non-partners are part of
the Defined Benefit Pension Plan.  The fact that non-partners, by
the virtue of being non-partners, are not signatories to a
partnership agreement and are not required to arbitrate their
ERISA claims bears no relevance to whether a partner, who has
agreed to arbitrate all disputes arising out of the partnership
agreement, must arbitrate his ERISA claim.  The Court finds that
the plaintiff's ERISA claim is connected to the partnership
agreement, therefore, it is subject to arbitration.  Plaintiff's
benefits from the Defined Benefit Pension Plan flow from the fact
that he was a partner at Dewey.

arbitration clause itself, is for the arbitrators, and not the courts, to decide. 388 U.S. at 404.  The Supreme Court reaffirmed that holding in *Buckeye,* stating that "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." 126 S. Ct. at 1210.

In his complaint, the plaintiff does not allege that he was fraudulently induced to enter into the arbitration agreement. What he alleges is that he and other partners at Dewey were fraudulently induced into approving the new partnership agreement.  Plaintiff does not allege any facts to show that the arbitration clause was even discussed in conjunction with the amended partnership agreement.  Since plaintiff is challenging the amended partnership agreement, and not specifically its arbitration clause, this issue must be resolved by an arbitrator, and not by this Court, in accordance with *Prima Paint* and *Buckeye.*

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that the plaintiff entered into a valid and enforceable arbitration agreement with Dewey, and that the arbitration agreement encompasses all of plaintiff's claims asserted in his Complaint,

including the common law claims, and the claims based on the D.C. Human Rights Act and ERISA.  Accordingly, the Court **GRANTS** defendants' motion, and plaintiff's claims are **DISMISSED with prejudice.** The parties are ordered to arbitrate all of the claims asserted in the plaintiff's Complaint.  A separate Order accompanies this Memorandum Opinion.


SIGNED:   **EMMET G. SULLIVAN**
          **UNITED STATES DISTRICT JUDGE**
          **APRIL 26, 2006**